UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRANDON ANTHONY MOCKBEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00536-JPH-MG |
| | ) | |
| CHARLES DUGAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Brandon Mockbee alleges that Defendants violated his constitutional rights by confining him in administrative segregation for a prolonged length of time without meaningful periodic reviews of his status and subjected him to inhumane conditions of confinement. The defendants have moved for summary judgment. For the reasons that follow, their motion is **GRANTED**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Procedural Background

Mr. Mockbee filed his complaint on October 19, 2020, while confined at Wabash Valley Correctional Facility (WVCF). Dkt. 2. The Court screened Mr.

Mockbee's complaint pursuant to 28 U.S.C. § 1915A on February 3, 2021, and noted the following allegations:

> Mr. Mockbee states Branchville Correctional Facility ("BCF") Warden Kathy Alvey placed him in administrative segregation on January 15, 2020, and that he remains in administrative segregation at WVCF. During this time, he has been confined to his cell 24 hours per day and has not been allowed any recreation or interaction with other prisoners. His placement in administrative segregation has not been meaningfully reviewed.

Dkt. 16 at 2.

Based on these allegations, the Court identified plausible Eighth and Fourteenth Amendment claims against six defendants: BCF Warden Kathy Alvey, WVCF Warden Richard Brown, WVCF Case Worker Charles Dugan, WVCF Classification Officer Matt Leohr, Indiana Department of Correction (IDOC) Classification Director Jack Hendrix, and IDOC Commissioner Robert Carter. *Id.* The Court directed Mr. Mockbee to file an amended complaint if he believed the Court failed to recognize any claims, *see id.* at 6, but he never did so.

The Court specifically acknowledged and dismissed Eighth Amendment conditions-of-confinement claims based on allegations that Mr. Mockbee was deprived of showers and commissary access, forced to eat in his cell, and denied visits and adequate access to legal materials. Dkt. 16 at 3. Therefore, his Eighth Amendment claims are based solely on the allegations noted at screening—that Mr. Mockbee was confined to his cell 24 hours per day and deprived of recreation or interaction with other prisoners.

Defendants moved for summary judgment, and the motion is fully briefed. Dkts. 155; 179; 182.

3

## III.
## Factual Background

Because the defendants moved for summary judgment, the Court views and recites the evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On January 16, 2020, while incarcerated at Branchville, Mr. Mockbee was placed in the administrative restricted housing unit (RHU) pending investigation of an alleged disciplinary violation. Dkt. 180-1 at 5.

A week later, case worker Michelle Woodland completed a seven-day review form stating that Mr. Mockbee would remain in the RHU while the investigation continued. *Id.* at 1. She completed this review just outside Mr. Mockbee's cell door, where she appeared to be distracted by over 100 other inmates yelling for her attention. Dkt. 180 at 1.

Ms. Woodland completed a second seven-day review on January 30. Dkt. 180-1 at 2. This time, Ms. Woodland wrote that Mr. Mockbee would remain in the RHU and checked a box to indicate that he was a "[t]hreat to facility security." *Id.*

On January 30, Mr. Mockbee also filed a classification appeal challenging his continued confinement in the RHU. *Id.* at 12. Mr. Mockbee asserted that his disciplinary case was resolved and the basis for his confinement in the RHU was

4

therefore no longer valid. *Id.* Classification Officer Greg Sanders denied the appeal on February 3, 2020, deeming that the issue was "not appealable." *Id.*[1]

Ms. Woodland completed another seven-day review on February 13, again characterizing Mr. Mockbee as a security threat without any explanation. *Id.* at 3. Ms. Woodland wrote that the classification officer directed that Mr. Mockbee would remain in the RHU and that Mr. Mockbee would be transferred to a different prison as soon as the IDOC Central Office approved necessary paperwork. *Id.* She completed a nearly identical seven-day review on February 20. *Id.* at 4.

Mr. Mockbee wrote a second classification appeal on February 22, 2020, challenging the decision to transfer him to a different facility with an administrative segregation unit. *Id.* at 13. Mr. Mockbee alleged that the decision was retaliation for a legal action he took against Warden Alvey. *Id.* In his declaration, Mr. Mockbee alleges that Warden Alvey requested his transfer to keep him from achieving a more favorable security classification. Dkt. 180 at 2. Mr. Mockbee also complained in his classification appeal that he was unable to participate in a Department of Labor program or other programs that could improve his security classification. Dkt. 180-1 at 13.

Mr. Hendrix denied the appeal on March 19. *Id.* In a letter, Mr. Hendrix explained to Mr. Mockbee that the transfer:

---

[1] Mr. Mockbee states in his declaration that Mr. Hendrix "advised" that his first classification appeal "was denied but declined to give any explanation" except that it raised "a non-grievable issue." Dkt. 180 at 3. This appears to refer to Mr. Sanders's response to the first classification appeal.

5

> was based on your conduct history, failure to adjust, and both overall along with recent negative adjustment. Within the past year you have been found guilty of 7 conduct reports, which were all Class B's. Your conduct record demonstrates an unwillingness to follow the rules and regulations. Your placement is appropriate.

*Id.* at 10. In a separate letter, Derek Christian of the Classification Division addressed Mr. Mockbee's complaints regarding programs and job assignments. *Id.* at 23.

Mr. Mockbee was transferred to WVCF on March 13, 2020. Dkt. 159-1. On March 26, Mr. Dugan completed a form noting Mr. Mockbee's assignment to department-wide administrative restrictive housing (DWRH-A). Dkt. 180-1 at 14. Mr. Dugan checked boxes indicating that Mr. Mockbee's placement was based on a need for additional observation, an overall negative adjustment, a recent negative adjustment, and a failure to adjust. *Id.* He also explained:

> Offender Mockbee, Brandon is currently being housed on DWRH-A due to recent conduct violations and his history of making threats against staff. His most recent conduct was on 3-2-20. At that time he was written up on 3 B252's, interfering with staff. He also has a pending B213-threatening pending at this time.

*Id.*

The record does not include any written reviews of Mr. Mockbee's placement in April, May, June, or July 2020. On August 4, Mr. Dugan completed a document titled "Behavior Modification Plan." Dkt. 180-1 at 15. According to this document, Mr. Mockbee was to remain in DWRH-A because of continued failure to adjust. *Id.* Specifically, Mr. Dugan noted that Mr. Mockbee accrued another disciplinary violation in June and failed to complete two programs, including an anger management program. *Id.* On the positive side, Mr. Dugan

noted that Mr. Mockbee had completed his recommended and required mental health evaluations and screenings. *Id.*

On August 14, Mr. Dugan completed a form titled "Report of Classification Hearing." Dkt. 180-1 at 26. Mr. Dugan requested that Mr. Mockbee be reclassified and approved for transfer to any Level 4 IDOC facility. *Id.* Shortly thereafter, Mr. Leohr approved Mr. Mockbee for discharge from department-wide administrative segregation and recommended his transfer to a Level 3 facility due to his conduct history. *Id.*

Mr. Mockbee appealed his reclassification and recommended transfer on September 30, 2020. Dkt. 180-1 at 28. He asserted that his conduct history warranted transfer to a less restrictive Level 1 or 2 facility. *Id.* He added that he had been deprived of a 90-day review of his DWRH-A classification and any opportunity to present documents to the staff members determining his classification. *Id.* He requested "a full board hearing." *Id.* Kevin Gilmore denied Mr. Mockbee's appeal the following week and provided the following explanation:

> Your classification appeal and all related documents have been reviewed. You received 9 class B conduct reports in the past year. You are appropriately classified.

*Id.* Mr. Mockbee alleges in his declaration that each of these conduct reports was ultimately dismissed, or he was acquitted of the charges. Dkt. 180 at 3–4. However, he does not cite any other evidence to support this assertion.

Mr. Mockbee also wrote Case Worker Jerry Snyder on September 30 and requested a 90-day review of his classification and to be transferred out of segregation. Dkt. 180-1 at 25. Mr. Snyder responded on October 2 that there

was "no reason to do" a 90-day review because Mr. Mockbee was "already approved for release" from segregation. *Id.* Mr. Snyder added that Mr. Mockbee had been approved for transfer to New Castle Correctional Facility (NCCF) and that he would continue to receive "monthly reviews" until then. *Id.*

Mr. Mockbee submitted another classification appeal on October 20, 2020. Dkt. 180-1 at 27. Mr. Mockbee opposed his transfer to NCCF and demanded a 90-day review. *Id.* Mr. Gilmore provided the following response three days later:

> Your classification appeal and all related documents have been reviewed. Due to your extensive conduct history, it was determined by the UMT that placement at NCN TU was appropriate based on your criminogenic risk/need factors. 90 days reviews are not appropriate at this time. You are not assigned to DRSHA. You are on ARSH pending transfer.
>
> Appeal denied.

*Id.*

On December 30, 2020, Mr. Mockbee wrote Mr. Snyder again and asked whether prison policy called for 90-day reviews for inmates in administrative segregation. *Id.* at 25. Mr. Snyder responded on January 4, 2021: "Yes, but you are already approved for release so we will do the 30 day reviews." *Id.*

Mr. Mockbee was transferred to NCCF on January 28, 2021. Dkt. 159-1. Mr. Mockbee states in his declaration that he was "continuously confined" in segregation until February 25, 2022. Dkt. 180 at 1. He also states that he was placed in another restrictive housing unit at NCCF on February 15, 2021, a few weeks after his transfer. *Id.* at 5. Records Mr. Mockbee submitted indicate that he was placed in a 14-day medical quarantine upon his arrival at NCCF, dkt. 180-1 at 16, and then in the S.T.A.N.D. Unit, *id.* at 17.

8

The record offers little information about the S.T.A.N.D. Unit. The Court understands that it is a transitional "step-down" unit for inmates who have spent significant time in administrative segregation. *See Isby v. Brown*, 856 F.3d 508, 516–17 (7th Cir. 2017) (discussing transitional unit at NCCF); *see also* dkt. 180-1 at 27 (discussing transfer to "NCN TU"). Inmates in this unit may complete programs that are not available in administrative segregation. *Isby*, 856 F.3d at 516–17. The document noting Mr. Mockbee's arrival at NCCF and placement in the S.T.A.N.D. Unit sets a goal for him to comply with his case plan and complete his "next phase book" before his next review. Dkt. 180-1 at 17.

Although Mr. Mockbee alleges that he remained in segregation for another year, *see* dkt. 180 at 1, no other evidence in the record clarifies his placement following his arrival in the S.T.A.N.D. Unit or the reasons for it.

## IV.
## Discussion

Mr. Mockbee alleges that he was confined in administrative segregation without due process and subjected to conditions that violated the Eighth Amendment. Defendants argue that they are entitled to summary judgment on both claims.

### A. Fourteenth Amendment Claims

"[I]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). "Of course, administrative segregation may not be used as a pretext for indefinite

confinement of an inmate." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). "Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Id.*

Due process does not require periodic reviews to be formal or adversarial. *Id.* at 472. Inmates are not ordinarily entitled to present evidence or statements. *Id.* at 477 n.9. Rather, periodic reviews must be "meaningful," which is to say they must be "open to the possibility of a different outcome." *Isby v. Brown*, 856 F.3d 508, 527–28 (7th Cir. 2017). Similarly, due process does not require custodians to conduct their periodic reviews according to rigid timelines. "The periodic review need only be sufficiently frequent that administrative segregation does not become 'a pretext for indefinite confinement of an inmate.'" *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012) (quoting *Hewitt*, 459 U.S. at 477 n.9). Otherwise, the frequency of periodic reviews "is committed to the discretion of the prison officials." *Isby*, 856 F.3d at 525.

### 1. Substance of the reviews

Mr. Mockbee's Fourteenth Amendment claims span approximately one year—from his placement in the RHU at BCF in January 2020 until his transfer to NCCF in January 2021.[2] He received at least six meaningful reviews of his confinement to administrative segregation during that time, including:

---

[2] Although Mr. Mockbee states that he remained in some form of segregation until 2022, he filed his complaint in October 2020 and never amended it to add claims concerning the conditions or review of his confinement following his transfer to NCCF in early 2021. Accordingly, the Court treats Mr. Mockbee's claims as terminating upon that transfer, only a few months after he filed his complaint. *See* dkt. 16 at 2–3 (screening order allowing Mr. Mockbee to proceed on administrative segregation claims related to Branchville Correctional Facility and WVCF).

1) Mr. Hendrix's denial of Mr. Mockbee's second classification appeal on March 19, 2020. Dkt. 180-1 at 10.

2) Mr. Dugan's assessment of Mr. Mockbee's assignment to DWRH-A on March 26. *Id.* at 14.

3) Mr. Dugan's behavior modification plan report on August 4. *Id.* at 15.

4) The approval later in August for Mr. Mockbee to be released from DWRH-A and transferred to a different facility. *Id.* at 26.

5) Mr. Gilmore's denial of Mr. Mockbee's classification appeal on October 5. *Id.* at 28.

6) Mr. Gilmore's response to Mr. Mockbee's classification appeal on October 23. *Id.* at 27.

These reviews did not result in the outcome Mr. Mockbee desired—immediate release from segregation, transfer to a lower-security prison, a job, and enrollment in programs. But they were not perfunctory. They consisted of more than pre-printed forms or "rote repetition of the same two boilerplate sentences." *Isby*, 856 F.3d at 528. In five of the six documents, the author provided a brief but informative narrative explaining that Mr. Mockbee's confinement to administrative segregation was based on his numerous and, typically, very recent conduct violations. *See, e.g.*, dkt. 180-1 at 14 (noting pending charge). The sixth did not merely demonstrate "the possibility of a different outcome," *Isby*, 856 F.3d at 527–28, but actually implemented it by approving Mr. Mockbee's release from administrative segregation and transfer to a less restrictive Level 3 facility. Dkt. 180-1 at 26.

Mr. Mockbee's transfer was not completed for another five months. And he was not released to the general population. However, the decision to transfer Mr.

11

Mockbee from administrative segregation to the S.T.A.N.D. Unit at NCCF showed that the prison staff's reviews of his status were open to multiple outcomes rather than shams designed to keep him in administrative segregation perpetually. The post-transfer evidence in the record reinforces this conclusion, as it made clear that Mr. Mockbee's path to the general population was to continue to complete the steps of his program and comply with his case plan. Dkt. 180-1 at 17.

The defendants argue that Mr. Mockbee "can produce no admissible evidence that" the reviews noted above "were not meaningful," dkt. 159 at 8, and he has produced none. Rather, Mr. Mockbee argues that the Court should find that the review procedures at WVCF were not constitutionally meaningful for the same reasons they fell short in *Isby*.

There, the Seventh Circuit considered similar Fourteenth Amendment due process claims by a Wabash Valley inmate who had been held in administrative segregation for over ten years. *See* 856 F.3d at 515. While Mr. Isby consistently received written 30-day reviews of his placement, each consisted of the exact same, uninformative, two-sentence explanation that appeared in the previous month's review: "Your status has been reviewed and there are no changes recommended to the Southern Regional Director at this time. Your current Department-wide Administrative segregation status shall remain in effect unless otherwise rescinded by the Southern Regional Director." *Id.* Mr. Isby ostensibly remained in administrative segregation because of discipline violations, but he received the same reviews every 30 days despite committing no major conduct violations for over five years. *Id.* at 515–16. The court concluded that Mr. Isby

"raised triable issues of material fact regarding whether his reviews were meaningful or pretextual." *Isby*, 856 F.3d at 529.

The reviews Mr. Mockbee received were materially different from those described in *Isby*. Mr. Mockbee's written reviews were not identical and each clearly articulated the basis for Mr. Mockbee's continued confinement to administrative segregation, citing his recent or even ongoing disciplinary violations, not incidents from years earlier. This case therefore falls under *Isby*'s statement that "[e]ven one or two edits or additions along these lines could assuage our concerns and provide helpful notice to Isby as to the reasons for his placement and how he could get out." *Id.* at 527. Mr. Mockbee's reviews were consistently edited and provided helpful and unmistakable notice that his path out of administrative segregation was abstaining from conduct violations.

The eventual outcome of Mr. Mockbee's reviews further sharpens this contrast. Mr. Isby was considered for transfer to NCCF's transition unit, but the transfer ultimately was not recommended or executed. *Id.* at 517. Meanwhile, Mr. Mockbee's reviews resulted in release from department-wide administrative segregation, transfer to the S.T.A.N.D. Unit, and a path toward release to a general population unit.

Given these critical differences in facts, *Isby* does not support Mr. Mockbee's claim. Under the evidence designated here, no reasonable jury could find that his confinement to administrative segregation was meaningfully reviewed at least six times.

### 2. Frequency of the reviews

The defendants also argue that the time between reviews did not violate the Fourteenth Amendment's requirement of "periodic" reviews. Dkt. 159 at 6–7. Due process does not impose rigid schedules. Rather, reviews "need only be sufficiently frequent that administrative segregation does not become 'a pretext for indefinite confinement of an inmate.'" *Westefer*, 682 F.3d at 686 (quoting *Hewitt*, 459 U.S. at 477 n.9). The frequency of these reviews is "committed to the administrative discretion of the prison officials." *Id.* (cleaned up).

Viewing the designated evidence in Mr. Mockbee's favor, the longest time between meaningful reviews for Mr. Mockbee was from March 26 until August 4, barely over four months. Then, Mr. Mockbee received the behavior modification plan document noting his recent disciplinary infraction. *See* dkt. 180-1 at 15. Within weeks, he received notice that his classification had been modified and that he would be released from administrative segregation and transferred, *id.* at 26, showing that his reviews were not pretextual and his confinement to administrative segregation did not have to be indefinite.

Mr. Mockbee nevertheless attacks the frequency of his reviews by arguing that Indiana law and IDOC policy entitled him to written reviews every 30 days and additional reviews every 90 days. Deviation from those timelines, however, does not violate the Fourteenth Amendment. "A state ought to follow its law," but "the violation of state law is not itself the violation of the Constitution." *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988). The Court must therefore "reject" any "attempt to convert a substantive violation of state law into a

14

violation of the United States Constitution." *Colon v. Schneider*, 899 F.2d 660, 672 (7th Cir. 1990).

The Court does not suggest that a four-month gap between meaningful reviews will never violate due process, or endorse how Mr. Mockbee's reviews were handled. Instead, the Court finds that the reviews Mr. Mockbee received— taken together—were frequent enough to satisfy due process. Over the span of a year, Mr. Mockbee received at least six meaningful reviews with no gap longer than a bit more than four months. Midway through that period, the prison staff determined to release him from administrative segregation and place him in NCCF's transition program. On this record, no reasonable jury could find that Mr. Mockbee was subjected to indefinite confinement in segregation or that the reviews he received were pretextual. *See Westefer*, 682 F.3d at 868. Therefore, the defendants are entitled to summary judgment on Mr. Mockbee's Fourteenth Amendment claims.

B.  **Eighth Amendment Claim**

Eighth Amendment claims based on long-term confinement in segregation require the plaintiff to prove two elements. First, "an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate 'the minimal civilized measure of life's necessities,' . . . creating an excessive risk to the inmate's health and safety." *Isby*, 856 F.3d at 521 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, a "subjective showing of a defendant's culpable state of mind." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'[P]rolonged confinement in administrative segregation may constitute a

15

violation of the Eighth Amendment . . . depending on the duration and nature of the segregation and whether there were feasible alternatives to that confinement.'" *Id.* (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012)).

Under *Isby*, a plaintiff pursuing an Eighth Amendment claim in the context of administrative segregation must clear a high bar to satisfy the objective prong. In *Isby*, the factual record was well-developed, showing that:

- Isby was confined for 23 hours per day in an 80-square-foot cell.
- When he was permitted to leave for recreation, the recreation space was often littered with bird droppings or dead birds.
- He was constrained by a "dog leash" when he was allowed to leave his cell.
- Isby received one phone call per week.
- Lights remained on in his cell 24 hours per day.
- Temperatures in his unit fluctuated between extremes.
- He lacked access to clean drinking water and warm clothes and bedding.
- He endured these conditions for over ten years.

86 F.3d at 513–15. Even so, the Seventh Circuit affirmed summary judgment for the defendants on Mr. Isby's Eighth Amendment claim. Considering these conditions in the aggregate and over a span of ten years, Mr. Isby could not demonstrate an extreme deprivation of basic human needs. *Id.* at 522.

The subjective element is also demanding. The plaintiff must prove that the defendants "acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Thomas v. Blackard*, 2

F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer*, 511 U.S. at 828). A plaintiff cannot prove deliberate indifference by showing only that the defendants were "aware of facts from which the inference *could be* drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837 (emphasis added). Rather, the plaintiff must also show that the defendant *actually drew* the inference. *Id.* A "prisoner's bare assertion is not enough to make the [defendant] subjectively aware of a risk, if the objective indicators do not substantiate the inmate's assertion." *Riccardo v. Rausch*, 375 F.3d 521, 528 (7th Cir. 2004).

Here, the designated evidence does not allow a reasonable jury to find an Eighth Amendment violation. First, Mr. Mockbee fails to designate evidence regarding the conditions he experienced in administrative segregation as he must in response to Defendants' motion for summary judgment. *Beardsall v. CVS Pharmacy*, 953 F.3d 969, 972 (7th Cir. 2020) (discussing nature of non-movant's burden in response to properly supported motion for summary judgment). His declaration and the records attached to it address the basis for his confinement in administrative segregation and his custodians' reviews of that placement, but a few statements in his verified complaint is the only evidence of the conditions of confinement—restrictions on out-of-cell time, recreation, or interaction with other prisoners. From this evidence, no jury could conclude that those conditions deprived Mr. Mockbee of the necessities of a civilized life or created an excessive risk to his health or safety. Dkt. 159 at 10.

Next, Mr. Mockbee does not "go beyond the pleadings" to support his contentions. *Beardsall*, 953 F.3d at 972. His verified complaint attests that he

17

was confined to his cell 24 hours per day but acknowledges that he was permitted to leave on certain occasions; when he left, he was shackled; he ate his meals alone, and they were cold and unhealthy. Dkt. 2 at 10. But it is not clear whether Mr. Mockbee faced these conditions throughout his year in administrative segregation or whether his conditions changed between facilities. Even crediting his verified complaint, the record pales in comparison to *Isby* in terms of volume and specificity of evidence and the duration of the conditions described. Like Mr. Isby, Mr. Mockbee has failed to pave a way for a reasonable jury to find that he was deprived of the basic necessities of civilization. 86 F.3d at 522.

Last, Mr. Mockbee designates no evidence of subjective intent. The record includes only minimal evidence of the conditions he faced in administrative segregation. It includes no designated evidence concerning any defendant's role in implementing, enforcing, or maintaining those conditions. So even if a jury could reasonably find that Mr. Mockbee suffered an extreme deprivation, it would have no basis to find that any defendant was subjectively aware that Mr. Mockbee faced a serious risk of harm.

In sum, the record lacks any evidence from which a reasonable jury could find that any defendant has violated Mr. Mockbee's Eighth Amendment rights. The defendants are entitled to summary judgment.

## V.
## Conclusion

The defendants' motion for summary judgment, dkt. [155], is **granted**. The **clerk is directed** to enter **final judgment** consistent with this order and the screening order, dkt. 16.

**SO ORDERED.**

Date: 9/29/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

BRANDON ANTHONY MOCKBEE
262691
PLAINFIELD – CF
PLAINFIELD CORRECTIONAL FACILITY
PLAINFIELD, IN 46168
Electronic Service Participant – Court Only

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com